# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

RICHARD MARTINUS and
MARIANNE MARTINUS,

      Plaintiffs,

v.

VILLAGE OF SPRING LAKE,

      Defendant.

Case No.
Hon.

---

BODMAN PLC
Floyd E. Gates, Jr. (P54234)
John D. Gardiner (P72641)
99 Monroe Ave, NW Ste 300
Grand Rapids, MI 49503
(616) 205-1860
fgates@bodmanlaw.com
jgardiner@bodmanlaw.com
*Attorneys for Plaintiffs*

---

# **COMPLAINT**

Plaintiffs Richard and Marianne Martinus complain against Defendant Village of Spring Lake (the "Village") as follows:

## PARTIES

1.Richard Martinus is a Michigan resident with his primary residence in 209 S. Park Street, Ottawa County, Michigan.

2.Marianne Martinus is a Michigan resident with her primary residence in 209 S. Park Street, Ottawa County, Michigan.

3.The Village is a Michigan municipal corporation with its principal place of business and registered office at 102 W. Savidge Street, Spring Lake, Michigan.

## JURISDICTION AND VENUE

4.This Court has federal question jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the United States Constitution and 42 U.S.C. § 1983.

5.The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because Plaintiffs seek to redress the deprivation, under color of law, of rights secured by the United States Constitution.

6.The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a) because those claims are closely related to, and

form part of the same case and controversy as, the federal claims asserted by Plaintiffs.

7. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(b)(1) and (b)(2) because the Village is situated in this District and a substantial part of the acts and omissions giving rise to the claims described in this action occurred in this District.

## COMMON ALLEGATIONS

8. In 1988, Plaintiffs purchased a cottage located at 207 S. Park Street, Village of Spring Lake, Michigan.

9. The Village purchased real property next door located at 209 S. Park Street, Village of Spring Lake, MI.[1] The Village used the Property as a temporary office while it remodeled its permanent offices.

10. In 2011, the Village constructed a bike path and walkway adjacent to the Property.

11. To construct the bike path and pedestrian walkway, the Village lowered the height of the land by several feet, removed the concrete sea wall adjacent to the walkway, and significantly eliminated riprap and berm height.

---

[1] Throughout this Compliant, Plaintiffs shall refer to 207 S. Park Street and 209 S. Park Street as the "Property."

3

12. On or about December 30, 2012, Plaintiffs purchased the Property from the Village.





**Exhibit 1**.

13. Before Plaintiffs purchased the Property, Plaintiffs and the Village executed a "Reservation and Dedication of Public Bath and Walkway Easement" (the "Easement"). **Exhibit 2**.

4

14. The Village reserved a non-exclusive, perpetual and permanent Easement and right-of-way for the existing bike path and pedestrian walkway. *Id*.

15. The Easement was "for the purpose of operating, maintain, repairing, replacing, reinstalling, inspecting, and keeping in working order the Bicycle Path and Non-Motorized Pedestrian Path and Walkway (including sidewalks, and boardwalks, and security fencing and barriers. . .)". **Exhibit 1**.

16. The Easement was "dedicated unto the general public, the Village, its successors and assigns, for the use and benefit of the general public, Village, their successors and assigns, **FOREVER**." *Id.*

17. In March of 2019, the Grand River's water levels began to rise. As a result of the Villages' design and construction of the bike path, the rising water began to erode the bike path and threaten the Plaintiffs' Property.



**Exhibit 1**.

18. Plaintiffs pleaded with the Village to maintain the crumbling bike path per its obligation under the Easement, but it refused to do so.

19. Because of the design and construction of the bike path, namely that the Village lowered the height of the bike path, and removed the concrete wall, riprap, and other features of the land designed to keep rising tides away from the nearby homes, Plaintiffs' property was completely flooded with water from the Grand River. By Thanksgiving of 2019, the water had gushed onto and into Plaintiffs' Property.







Bodman_16990725_3

**Exhibit 1**.

20. Plaintiffs continued to request that the Village re-grade its bike path and maintain the Easement, but the Village again refused.

21. As a result of the flooding, Plaintiffs have to run three commercial grade pumps for twenty-four continuous hours to pump water away from the Property.

22. Because the Village refused to take any action to mitigate the flooding, Plaintiffs had no choice but to erect a wall to save their home.

23. After numerous efforts to resolve the flooding with the Village and to save their home, the Village chose not to take any action to mitigate the flooding. Instead, the Village threatened Plaintiffs with ordinance violations for erecting a wall to save their Property and threatened to remove Mr. Martinus from the Village Planning Commission.

24. After Mr. Martinus hired counsel to resolve the flooding issues and to attempt to save the home, the Village doubled down and cited both Mr. and Mrs. Martinus with numerous civil infractions for attempting to mitigate the flooding from their Property and save their home. **Exhibit 3**.

25. To date, Plaintiffs have incurred substantial damages to the structures that resulted from the Village's faulty design of the bike path and have incurred substantial damages in attempting to remediate the flooding.

26. As a result of the flooding, Plaintiffs have not only suffered damage to their Property, but have also suffered health issues. Plaintiffs both contracted infections. Mr. Maritnus was hospitalized for a week and Ms. Martinus had to obtain extensive medical treatment.

## COUNT I
## 42 U.S.C. § 1983
## VIOLATION OF PLAINTIFFS' CIVIL RIGHTS THROUGH TAKING OF ITS PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

27. Plaintiffs' incorporate by reference paragraphs 1-26.

28. The Fifth Amendment to the United States Constitution prohibits the taking of private property without just compensation.

29. The Fifth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment to the United States Constitution.

30. This is an inverse condemnation case.

31. Inverse condemnation is the means by which a landowner may recover just compensation under the Fifth Amendment for a physical taking of his property

when condemnation proceedings have not been instituted. *United States v. Clarke*, 445 U.S. 253, 257 (1980).

32. Even a temporary flooding gives rise to a claim for the taking of property. *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23, 34 (2012)

33. The Village designed and constructed the bike path. In constructing the bike path, the Village lowered the height of the land by several feet, removed the concrete sea wall adjacent to the walkway, and significantly eliminated riprap and berm height.

34. The Village intentionally lowered the height of the bike path by several inches so that pedestrians walking on the bike path would not be able to look into the homes nearby.

35. The Village has re-contoured and lowered the land, creating a system that deliberately discharges water onto the Plaintiffs' Property.

36. The Village's reconfiguration of the Property caused the Property to flood regularly and essentially amounted to the Village using the Property as an overflow detention area.

37. The recurrent flooding of the Property was a foreseeable result of the Village's construction and design of the bike path. The flooding was the direct, natural, and probable result of the construction of the bike path.

38. Before the bike path was constructed, the Property had never experienced flooding. Indeed, the Property had not been exposed to flooding comparable to the 2019 and 2020 accumulations in any other time span before construction of the bike path.

39. Repeated flooding has rendered portions of the Property unusable and has deprived the Property of its value.

40. In addition, the Village has issued civil infractions to the Plaintiffs to attempt to require them to remove the wall that is saving their Property from certain inevitable destruction as a result of the flooding—the flooding that would not be occurring but for the Village's reconstruction of the Property and outright refusal to maintain the bike path and Easement.

41. Instead of mitigating the flooding and allowing Plaintiffs' to take reasonable measures to prevent flooding, the Village has undertaken a vindictive prosecution to prevent Plaintiffs' from protecting their Property and has followed through on their threat to remove Mr. Martinus from the Planning Commission.

42. As a result of the flooding, Plaintiffs have suffered damages to their Property and health complications. The Village's conduct has diminished the value of the Property and denied Plaintiffs' viable use of the Property for extended periods of time.

WHEREFORE, Plaintiff respectfully requests entry of judgment against the Village as follows: (a) granting injunctive and declaratory relief finding that the Village's actions are unconstitutional and (b) awarding Plaintiffs damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

## COUNT II
## VIOLATION OF PLAINTIFFS' CONSTITUIONAL RIGHTS THROUGH UNCONSTITUTIONAL TAKING OF ITS PROPERTY IN VIOLATION OF THE MICHGAN CONSTITUION, ARTICLE 10, SECTION 2

43. Plaintiffs' incorporate by reference paragraphs 1-42.

44. Like the U.S. Constitution, Michigan's Constitution also prohibits the taking of property without just compensation. MI Const. Art. 10, § 2.

45. The right of complete possession and enjoyment is one of the essential elements of property in land.

46. Michigan recognizes a cause of action for inverse condemnation when the government fails to utilize the appropriate legal mechanisms to condemn property for public use.

47. An inverse condemnation may occur without a physical taking of the property. A diminution in the value of the property or a partial destruction may constitute a taking.

48. The Michigan Supreme Court has recognized that "where real estate is actually invaded by superinduced water, earth, sand or other material…it is a taking within the meaning of the Constitution." *Peterman v. Dep't. of Natural Resources,* 446 Mich. 177, 189 n16; 521 NW2d 499 (1994).

49. The Village designed and constructed the bike path. In constructing the bike path, the Village lowered the height of the land by several feet, removed the

concrete sea wall adjacent to the walkway, and significantly eliminated riprap and berm height.

50. The Village intentionally lowered the height of the bike path by several inches so that pedestrians walking on the bike path would not be able to look into the homes nearby.

51. The Village has re-contoured and lowered the land, creating a system that deliberately discharges water onto the Plaintiffs' Property.

52. The Village's reconfiguration of the Property caused the Property to flood regularly and essentially amounted to the Village using the Property as an overflow detention area.

53. The Village set into motion the destructive forces that caused the erosion and eventual destruction of the Property.

54. The recurrent flooding of the Property was a foreseeable result of the Village's construction and design of the bike path. The flooding was the direct, natural, and probable result of the construction of the bike path.

55. Before the bike path was constructed, the Property had never experienced flooding. The Property had not been exposed to flooding comparable to the 2019 and 2020 accumulations in any other time span before construction of the bike path.

56. Even decades ago, when water levels rose to higher levels than the levels experienced in 2019 and 2020, the Property never flooded.

57. Repeated flooding has rendered portions of the Property unusable and has deprived the Property of its value.

58. As a result of the flooding, Plaintiffs have suffered damages to their Property. The Village's conduct has diminished the value of the Property and denied Plaintiffs viable use of the Property for extended periods of time.

WHEREFORE, Plaintiffs respectfully request entry of judgment against the Village as follows: (a) granting injunctive and declaratory relief finding that the Village's actions are unconstitutional and (b) awarding Plaintiffs damages in an amount to be determined at trial, together with attorney fees, costs, and expenses.

## COUNT III
## BREACH OF CONTRACT

59. Plaintiffs' incorporate by reference paragraphs 1-58.

60. On or about December 28, 2012, the parties entered into an agreement under which Plaintiffs purchased the Property and the parties outlined the terms and conditions of the Easement.

61. Pursuant to the terms of the Easement, the Village is obligated to operate, maintain, repair, replace, reinstall and keep the bike path in working order.

62. The Village has failed to maintain or repair the bike path.

63. The Village's failure to keep the bike path in working order constitutes a breach of the Easement.

64. The Village's failure to keep the bike path in working order has caused damages to Plaintiffs and their Property.

WHEREFORE, Plaintiffs respectfully request entry a judgment in its favor and against the Village for the damages caused by the Village's breach of the Easement together with interest, costs, and reasonable attorney fees, and any other relief the Court deems just.

## COUNT IV
## <u>TRESPASS</u>

65. Plaintiff incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

66. Plaintiffs own the Property.

67. The Village knew that by reconfiguring the land around the Property, it would flood upon rising water levels.

68. The Village's flooding of the Property has interfered with Plaintiffs' exclusive ownership and possession of the Property and constitutes a trespass.

69. The aforementioned unlawful activities have directly and proximately caused Plaintiffs substantial damage, inducing diminution of the value of their Property, loss of enjoyment of Plaintiffs' possessive property, health issues, medical expenses, and other damages that flow naturally and consequentially from the Village's actions.

WHEREFORE, Plaintiff respectfully requests entry of judgment in its favor and an award of all damage to which Plaintiffs are entitled, injunctive relief ordering the Village to abate this nuisance, and any other legal or equitable relief to which Plaintiffs may be entitled, including costs, in interest, and attorney fees.

## COUNT V
## NUISANCE

70. Plaintiff incorporates by reference the allegations in paragraphs 1 through 69 of this Complaint.

71. The Village's flooding of Plaintiffs' Property unreasonably interferes with Plaintiffs' use and enjoyment of their land.

72. The Village's flooding constitutes a nuisance, interfering with Plaintiffs' right to the use and quiet enjoyment of their land.

73. The aforementioned unlawful activities have directly and proximately caused Plaintiffs substantial damage, inducing diminution of the value of their Property, loss of enjoyment of Plaintiffs' possessive property, health issues, medical expenses, and other damages that flow naturally and consequentially from the Village's actions.

WHEREFORE, Plaintiff respectfully requests entry of judgment in its favor and an award of all damage to which Plaintiffs are entitled, injunctive relief ordering the Village to abate this nuisance, and any other legal or equitable relief to which Plaintiffs may be entitled, including costs, in interest, and attorney fees.

                                                Respectfully submitted,

                                                BODMAN PLC

                                                By: /s/ *Floyd E. Gates, Jr.*
                                                Floyd E. Gates, Jr. (P54234)
                                                John D. Gardiner (P72641)
                                                99 Monroe Ave, NW, Ste 300
                                                Grand Rapids, MI 49503
                                                (616) 205-1860
                                                fgates@bodmanlaw.com
                                                jgardiner@bodmanlaw.com
                                                Attorneys for Plaintiffs

Date: October 15, 2020