UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD MARTINUS, MARIANNE MARTINUS,
MARTINUS FAMILY PROTECTION TRUST
u/a/d MAY 6, 2019, and MARY'S COZY WATER
FRONT COTTAGE, LLC,

               Plaintiff,

v.

VILLAGE OF SPRING LAKE,

               Defendants.

_____/

Case No. 1:20-cv-985

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

This lawsuit involves damage to property along the Grand River in the Village of Spring Lake ("Village").   Plaintiffs Richard Martinus, Marianne Martinus, the Martinus Family Protection Trust u/a/d May 6, 2019, and Mary's Cozy Water Front Cottage, LLC (collectively the "plaintiffs") filed their amended complaint on February 28, 2022 against defendant Village (ECF No. 94).   This matter is now before the Court on the Village's motion for partial summary judgment (the "first dispositive motion") (ECF No. 112) and motion for summary judgment (the "second dispositive motion") (ECF No. 117).

**I.**       **Plaintiffs' amended complaint**

In 1988, plaintiffs Richard Martinus and Marianne Martinus (referred to in the amended complaint as "Plaintiff Martinus") purchased a cottage located at 207 S. Park Street ("207

property").   Amend. Compl. at PageID.326.   On July 12, 2019, they transferred the property to plaintiff Mary's Cozy Water Front Cottage, LLC (the "LLC") on July 19, 2019.   *Id*.

The Village owned the property next door, 209 S. Park Street ("209 property") and used it as a temporary office.   *Id*. at PageID.327.   In 2011, the Village constructed a bicycle path and walkway (the "bike path") adjacent to the 209 property.   *Id*.   Plaintiffs alleged that to construct the bike path, the Village lowered the height of the land by several feet, removed the concrete sea wall adjacent to the walkway, and significantly eliminated riprap and berm height.   *Id*.

On December 28, 2012, in anticipation of selling the 209 Property to a third party, the Village reserved and dedicated a "Public Bicycle Path and Walkway Easement" over the property. *Id*.; Easement (ECF No. 94, PageID.344-347)   The easement created a non-exclusive, perpetual and permanent easement and right of way for the bike path.   Easement at PageID.345.   The easement was reserved

> for the purpose of operating, maintaining, repairing, replacing, reinstalling, inspecting and keeping in working order the [bike path] (including sidewalks, and boardwalks, and security fencing and barriers, with landscaping, at the election of the Village) which may run over and across the above-described Easement and right-of-way[.]

*Id*.   The Village reserved "the right to enter upon sufficient land adjacent to the [bike path] Easement or is required for the construction, installation, maintenance, repair, replacement, reinstallation, operation and inspection of said [path], together with the right to install and maintain signs on the adjacent land as to be used by the general public."   *Id*.

2

The Village also reserved the "right to enter upon the Easement at any reasonable time for the purpose of such construction, maintenance, repair, replacement, reinstallation and inspection of its [bike path]" and the "right to remove trees, brush, undergrowth and other obstructions situated upon the above-described piece or parcel of land which may interfere with the location, construction, maintenance or repair of such [bike path]".  *Id*. at PageID.346.  As part of the easement, the Village covenanted and agreed "that it will restore such piece or parcel of land to a similar condition, insofar as is reasonably possible, in the event it shall at any time become necessary to enter upon the Easement for the purpose of maintenance, repair, replacement, construction or reinstallation of such [bike path].  *Id*.

Richard and Marianne Martinus (the third party) consented to the terms of the easement and purchased the 209 property from the Village on or about December 30, 2012.  *Id*. at PageID.346; Amend. Compl. at PageID.327.   On May 6, 2019, they transferred the 209 property to plaintiff the Martinus Family Protection Trust u/a/d May 6, 2019 (the "Trust"), reserving unto themselves a life estate in the property.   Amend. Compl. at PageID.327.

The parties' dispute arose from the alleged events which occurred about six years after Richard and Marianne Martinus purchased the 209 property[1]:

> 20. In March of 2019, the Grand River's water levels began to rise. As a result of the Villages' [sic] design and construction of the bike path, the rising water began to erode the bike path and threaten the Plaintiffs' Property. See Exhibit 1.

> 21. Plaintiff Martinus, in both their individual capacity and their roles on behalf of the other Plaintiffs, pleaded with the Village to maintain the crumbling bike path per its obligation under the Easement, but it refused to do so.

---

[1] The term "Plaintiffs' Property" or "plaintiffs' property" refers to both the 207 property and the 209 property.

3

22. Because of the design and construction of the bike path, namely that the Village lowered the height of the bike path, and removed the concrete wall, riprap, and other features of the land designed to keep rising tides away from the nearby homes, Plaintiffs' property was completely flooded with water from the Grand River. By Thanksgiving of 2019, the water had gushed onto and into Plaintiffs' Property. Exhibit 1.

23. Plaintiff Martinus, in both their individual capacity and their roles on behalf of the other Plaintiffs, continued to request that the Village re-grade its bike path and maintain the Easement, but the Village again refused.

24. As a result of the flooding, Plaintiffs have to run three commercial grade pumps for twenty-four continuous hours to pump water away from the Property.

25. Because the Village refused to take any action to mitigate the flooding, Plaintiffs had no choice but to erect a wall to save their home.

26. After numerous efforts to resolve the flooding with the Village and to save their home, the Village chose not to take any action to mitigate the flooding. Instead, the Village threatened Plaintiffs with ordinance violations for erecting a wall to save their Property and threatened to remove Plaintiff Richard Martinus from the Village Planning Commission.

27. After Plaintiff Richard Martinus hired counsel to resolve the flooding issues and to attempt to save the home, the Village doubled down and cited Plaintiff Martinus with numerous civil infractions for attempting to mitigate the flooding from their Property and save their home. Exhibit 3.

28. To date, Plaintiffs have incurred substantial damages to the structures that resulted from the Village's faulty design of the bike path and have incurred substantial damages in attempting to remediate the flooding.

29. As a result of the flooding, Plaintiffs have not only suffered damage to their Property, but have also suffered health issues. Plaintiff Martinus both contracted infections. Plaintiff Richard Maritnus was hospitalized for a week and Plaintiff Marianne Martinus had to obtain extensive medical treatment.

Amend. Compl. at PageID.327-328 (emphasis omitted).

Plaintiffs' amended complaint consists of five counts.  In Count I, brought pursuant to 42 U.S.C. § 1983, plaintiffs alleged that the Village committed an inverse condemnation of their property in violation of the Fifth Amendment.  *Id*. at PageID.329-330. Plaintiffs seek declaratory relief finding that the Village's actions are unconstitutional, an injunction against the Village, damages, and attorney fees pursuant to 42 U.S.C. § 1988.  *Id*. at PageID.333.

In Count II, plaintiffs alleged that the Village committed inverse condemnation of their property in violation of Article 10, § 2 of the Michigan Constitution. *Id*. at PageID.330-332. Plaintiffs seek declaratory relief finding that the Village's actions are unconstitutional, an injunction against the Village, and damages.  *Id*. at PageID.332.

In Count III, plaintiffs alleged that the Village breached a contract which the parties entered into "[o]n or about December 28, 2012." *Id*. at PageID.332.   Plaintiffs seek damages for "the Village's breach of the *Easement*."  *Id*. (emphasis added).

In Count IV, plaintiffs alleged that "[t]he Village's flooding of the Property has interfered with Plaintiffs' exclusive ownership and possession of the Property and constitutes a trespass."  *Id*. at PageID.332-333.   Plaintiffs seek monetary damages for the trespass and "injunctive relief ordering the Village to abate this *nuisance*."  *Id*. at PageID.333 (emphasis added)

Finally, in Count V, plaintiffs alleged that "[t]he Village's flooding constitutes a nuisance, interfering with Plaintiffs' right to the use and quiet enjoyment of their land."  *Id*. at

PageID.333.   Plaintiffs seek damages and injunctive relief in the form of an order directing the Village to abate the nuisance.   *Id*. at Page.ID.329-333.

## II.    Preliminary matters

Throughout the course of filing motions and briefs, some preliminary matters have come to light which the Court will address.   The parties have been advised that these motions are not subject to the "Information and Guidelines for Civil Practice for The Honorable Janet T. Neff." Accordingly, the Court will not address any matters related to those guidelines.

Next, the record reflects that the Village filed two dispositive motions.   On May 13, 2022, the Village filed the first dispositive motion (ECF No. 112) which sought summary judgment on the state law torts alleged in Counts III, IV, and V (breach of contract, trespass, and nuisance).   On June 28, 2022, the Village filed the second dispositive motion (ECF No. 117) which sought summary judgment on the Counts I and II (the federal and state claims for inverse condemnation) as well as plaintiffs' claims for injunctive relief.   Both motions were timely. *See* Stipulated Order (ECF No. 84).   In their response to the second dispositive motion (ECF No. 119, PageID.642-644), plaintiffs included an "imbedded" motion to strike or deny the Village's second dispositive motion because, among other things, no new information came to light and the Village is engaged in piecemeal filing of multiple motions for summary judgment to avoid page limitations.   The Court does not address motions "imbedded" in a response.   Furthermore, the parties' Third Amended Case Management Order (ECF No. 34) did not limit the number of dispositive motions. Accordingly, the Court will review the matters addressed in both dispositive motions and all of the parties' related filings.

6

### III.    Legal Standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.    Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."    *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### IV.    Discussion

### A.    Count I – Federal Inverse Condemnation

7

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

At the heart of this dispute is whether the Village took action against Plaintiffs' Property which resulted in an inverse condemnation. "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant." *Knick v. Township of Scott, Pennsylvania*, -- U.S. --, 139 S. Ct. 2162, 2168 (2019) (internal quotation marks omitted). "Inverse condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority." *Id*.

"Inverse condemnation law is tied to, and parallels, tort law." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003) (quotation marks omitted). "Thus, not every 'invasion' of private property resulting from government activity amounts to an appropriation." *Id*. The Court engages in a two-part inquiry to distinguish potential physical takings from possible torts. *Id*.

> First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.

*Id*. at 1355 (quotation marks omitted).

> Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.

*Id*. at 1356.

"Because government-induced flooding can constitute a taking of property, and because a taking need not be permanent to be compensable, our precedent indicates that government-induced flooding of limited duration may be compensable." *Arkansas Game and Fish Commission v. United States*, 568 U.S. 23, 34 (2012).   "Flooding cases, like other takings cases, should be assessed with reference to the particular circumstances of each case."   *Id*. at 37 (internal quotation marks omitted). "When . . . temporary physical invasion by government interferes with private property, our decisions recognize, time is indeed a factor in determining the existence *vel non* of a compensable taking."   *Id*. at 38.   Other circumstances relevant to a takings inquiry include "the degree to which the invasion is intended or is the foreseeable result of authorized government action" and "the character of the land at issue and the owner's 'reasonable investment-backed expectations' regarding the land's use." *Id*. at 39.

Here, viewing the evidence in the light most favorable to plaintiffs, the Court concludes that they have not established a "taking" under the Fifth Amendment.   Plaintiffs have presented expert opinions how the bike path on the 209 property changed some drainage patterns:

> As seen on Exhibit 1, Defendant, when constructing the Bike Path, raised the land underneath the Bike Path in some areas, while lowering it in others. Exhibit

1. The practical effect of this, per the report and testimony of Plaintiffs' expert, was to subject the Plaintiffs' Property to flooding it would have otherwise not experienced. Exhibit 4 – David Schultz [P.E.] Report, p. 2 ("compounding the problems at the Property is the fact that a pre-existing drainage feature was removed by the design and construction of the Bike Trail  .  .  . the design and associated construction has created a blocked drainage condition, where over 2 acres' worth of runoff reached the Bike Trial and backs up onto the Property.").

Plaintiffs' Response (ECF No. 119, PageID.646).    The thrust of plaintiffs' arguments involve the drainage of surface water, not flooding by the Grand River.

In this regard, Mr. Schultz testified that:

Q        Okay. And you will agree with me that the construction of the bike path then raised the elevations on a significant portion of their property, correct?

A        On a small portion, actually. It is about 35 feet.

Q        All right. And by raising the elevations on those portions, that 35-foot portion, didn't that make it, that portion, probably less prone to flood?

A        It made it less prone to flood from the Grand River, but it blocked off the natural runoff from the north to the river, so we had a continual flooding every time it rains.

Schultz Dep. (ECF No. 119-2, PageID.661-662); Plaintiffs' Response at PageID.646.

In summary plaintiffs contend that

[A]t the least, a factual question exists as to whether the Defendant's construction of the Bike Path caused water to back up on the Plaintiffs' Property so as to cause flooding it would not have otherwise experienced, and at the most, given the currently uncontroverted evidence on the topic (as Defendant's expert has testified he has not investigated this issue), that the Defendant's construction of the Bike Path did, in fact, cause the Plaintiffs' Property to flood by creating such a back-up.

Plaintiffs' Response at PageID.648.

Plaintiffs also contend that based on the testimony of both experts and the cross-section portion of the bike path and walkway,

10

"that a portion of Plaintiffs' Property was lowered by Defendant when installing the Bike Path, while adjoining portions of both the Property and neighboring properties adjacent to the lowered area which had previously been downhill of the Property were raised above the newly-created low point of the Property. Exhibit 1.[Profile view of study area, enlargement from Exhibit A]

Plaintiffs' Response at PageID.649 (emphasis omitted).

In addition, plaintiffs stated that the Village sought to reduce costs in constructing the bike path,

[A]s testified to by Defendant's expert, the raising/lowering of Plaintiffs' Property was done, at least in part, so as to allow the Defendant to reduce costs, and remove the necessity to receive additional permitting, due to EGLE/MDEQ's requirement that permits be secured if more than 300 cubic feet of fill material is moved within the 100 year floodplain. Exhibit 3, pp. 89-94. Defendant's expert testified, during his deposition, that Defendant, in creating its plans and apportioning fill/cuts, would have cut in some portions of the project to compensate for fill in others, including cutting material at Plaintiffs' Property so as to allow for fill in other places. *Id.*

*Id.* at PageID.649.

Assuming that all of this true, the gist of plaintiffs' argument is that,

This type of "affirmative action" by Defendant further supports Plaintiffs' inverse condemnation claim. This is especially true where, as here, Defendant made decisions to burden Plaintiffs' Property with a "low" spot so as to both save costs, and also be able to increase fill at other portions of the Bike Path off of Plaintiffs' Property.

*Id.*

While a genuine issue of fact may exist as to whether the Village's construction of the bike path constituted a tort under state law, plaintiffs fail to meet their burden to demonstrate that those actions amounted to an inverse condemnation of the 207 and 209 properties in violation of the Fifth Amendment.

11

A temporary flooding need not be permanent to be compensable under the Fifth Amendment.   Here the alleged taking was a single incident of flooding from the Grand River which occurred perhaps eight years after the Village constructed the bike path in 2011.   There is no allegation that plaintiffs' property flooded until 2019, when the Grand River rose in March and their property flooded on or about Thanksgiving.   In this regard, plaintiffs' own expert testified that the bike path "made it [Plaintiffs' Property] less prone to flood from the Grand River." Schultz Dep. at PageID.662.

Next, the Court considers whether the alleged invasion of plaintiffs' property (*i.e.*, the flooding with water from the Grand River) is the intended or the foreseeable result of authorized government action (*i.e.*, the construction of the bike path). As discussed, plaintiffs' expert testified that the Village's actions made their property less prone to flooding from the Grand River.   *See* Schultz Dep. at PageID.662.   The problem identified by Mr. Schultz was the that the construction blocked off the natural runoff from the north to the river.   *Id*.   The Village's expert, Ryan M. Arends, P.E., agreed that raising the elevation of the bike path had the potential for backing up the surface water, until it can flow over the elevation and then into the river, or flow to a location where the trail is lower and get on the trail.   Arends Dep. (ECF No. 119-3, PageID.666); Plaintiffs' Response at PageID.648 (quoting Arends' deposition at pp. 76-77 and 93-94).   Assuming that the bike path was designed with the potential to back up surface water until it flowed on the trail or into the river, and that the surface water did pool on plaintiffs' property, this periodic pooling of surface water is not the basis for plaintiffs' inverse condemnation claim that the bike path caused the Grand River to flood on their property. The pooling on plaintiffs'

12

property appears to be in the nature of an incidental or consequential injury caused by the bike path blocking the flow of surface water.

Finally, the Court considers the character of the land at issue and the plaintiffs' "reasonable investment-backed expectations" regarding the land's use.   Richard and Marianne Martinus purchased a cottage on the 207 property in 1988.   They purchased the 209 property (a temporary office) after the Village constructed the bike path in 2011.

The Village points out that the 207 and 209 properties are in a flood plain.   In addressing the two properties, plaintiffs' expert opined,

> I would say they are flood prone. I would not assume anything about past performance. . . by being in the floodplain, you are on notice that it is flood prone. Does it mean it has a history of flooding? Not at all.

Schultz Dep. at PageID.663. When asked, "What would you do to determine whether it had a history of flooding, either parcel?," plaintiffs' expert responded, "I don't know. What would you do?".   *Id*.   In addressing the floodplain issue, the Village filed the affidavit of Russ Creasy, who stated that the 209 property was on the banks of the Grand River[2], and that when he lived on the property in the 1940s, the Grand River flooded the yard of the property.   Creasy Aff. (ECF No. 120-1, PageID.706). In considering the character of the property at issue and plaintiffs' reasonable investment-backed expectations, the evidence reflects that both the 207 and 209 properties are in a floodplain, that the 209 property is on the banks of the Grand River, and that the 209 property had flooded decades before the Village constructed the bike path. Based on this record, plaintiffs'

---

[2] The legal description for the 209 property states that it borders the Grand River and includes all riparian rights to the waters of the river.   *See* Easement at PageID.344.

13

reasonable expectation would be that they purchased residential property, some of which is riverfront property, and all of which is located in floodplain of a river which has flooded in the past.

Given these considerations, and viewing the evidence in the light most favorable to plaintiffs, the Court concludes that plaintiffs have not established an inverse condemnation under the Fifth Amendment.   The Village's bike path made plaintiffs' property less prone to flooding from the Grand River.   Assuming that the bike path diverted some additional surface water draining onto the property, this situation appears to be an incidental or consequential injury in the nature of a tort.[3]   Accordingly, the Village should be granted summary judgment as to plaintiffs' Count I (federal inverse condemnation).

### B.    Count II - Michigan Inverse Condemnation

In Count II, plaintiffs alleged that the Village engaged in an inverse condemnation of their property in violation of Article 10, § 2 of the Michigan Constitution, which provides

> Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

Const. 1963, art. 10, § 2.

> A claim of inverse condemnation [under Article 10, § 2] is "a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency."   *Merkur Steel Supply, Inc. v. Detroit*, 261 Mich. App. 116, 129, 680 N.W.2d 485 (2004) (quotation marks and citation omitted).

---

[3] *See Kay v. Heyn*, No. 348303, 2020 WL 4236416 at *4 (Mich. App. July 23, 2020) ("A party who disrupts the natural flow of water and diverts it to another person's property may be liable for trespass.") (citing *Wiggins v. City of Burton*, 291 Mich. App. 532, 563-565; 805 N.W.2d 517 (2011).

"Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.' " *Id*. at 125, 680 N.W.2d 485.

*Mays v. Governor of Michigan*, 506 Mich. 157, 173, 954 N.W.2d 139 (2020).

"[A] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages." *Id*. (internal quotation marks omitted). In the context of an inverse condemnation suit for diminution in value, the right to just compensation "exists only where the landowner can allege a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated. *Id*. at 174. "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property." *Charles Murphy, MD, PC v. Detroit*, 201 Mich. App. 54, 56, 506 N.W.2d 5 (1993).

A plaintiff alleging a de facto taking or inverse condemnation must prove that the government's actions were a substantial cause of the decline of his property's value and also establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.

*Hinojosa v. Department of Natural Resources*, 263 Mich. App. 537, 548, 688 N.W.2d 550 (2004) (internal quotation marks omitted).

Here, plaintiffs contend that the Village abused its legitimate powers because in constructing the bike path it raised and lowered plaintiffs' property in a manner to reduce costs and to avoid additional permits related to moving fill material within the 100-year floodplain. *See* Plaintiffs' Response (ECF No. 119, PageID.649). Plaintiffs' argument regarding the "raising and lowering" of their property appears directed to the 209 property on which the bike path was built.

15

However, plaintiffs fail to explain how the Village "took" the 209 property by inverse condemnation from them, when plaintiffs did not own the property at the time of alleged government action in 2011. As discussed, the Village owned that property when it built the bike path, and Richard and Marianne Martinus were aware of the construction when they purchased the property subject to the easement for the existing bike path. In addition, as discussed in § IV.A., there is no evidence that the Village's action caused the Grand River to flood plaintiffs' property or that the Village's action rose to the level of constitutional taking. Plaintiffs have not established inverse condemnation under the Michigan Constitution. Accordingly, the Village should be granted summary judgment as to plaintiffs' Count II (Michigan Inverse Condemnation).

### C.    Count III – Breach of Contract

Plaintiffs alleged that the Village breached a contract which the parties entered into on or about December 28, 2012. Amend. Compl. at PageID.332. Plaintiffs' claim fails because there is no contract between the parties. The referenced document is an easement in which the Village reserved in the 209 property before selling the property to Robert and Marianne Martinus. *See* Easement at PageID.344-347.

> "An easement is the right to use the land of another for a specified purpose," *Schadewald v. Brulé*, 225 Mich. App. 26, 35, 570 N.W.2d 788 (1997), and an easement may be created "by express grant, by reservation or exception, or by covenant or agreement," [*Rossow v. Brentwood Farms Development, Inc.*, 251 Mich. App. 652, 661, 651 N.W.2d 458] (quotation marks and citation omitted). The "use of an easement must be confined strictly to the purposes for which it was granted or reserved," [*Blackhawk Development Corp. v. Village of Dexter*, 473 Mich. 33, 41, 700 N.W.2d 364] (quotation marks and citation omitted), and "[t]he owner of the fee subject to an easement may rightfully use the land for any purpose not inconsistent with the easement owner's rights," *Morrow v. Boldt*, 203 Mich. App. 324, 329, 512 N.W.2d 83 (1994). The language of the instrument that granted the easement determines the scope of the easement holder's rights. *Blackhawk Dev.*

16

*Corp.*, 473 Mich. at 42, 700 N.W.2d 364. "Once granted, an easement cannot be modified by either party unilaterally." *Schadewald*, 225 Mich. App. at 36, 570 N.W.2d 788.

*Bayberry Group, Inc. v. Crystal Beach Condominium Association*, 334 Mich. App. 385, 399-400, 964 N.W.2d 846 (2020).

In dedicating this easement, the Village reserved the right to enter the 209 property to operate and maintain the bike path.   The Village's only affirmative duty under the easement is to restore the property in the event it shall "become necessary to enter upon the Easement for the purpose of maintenance, repair, replacement, construction or reinstallation of such [bike path]." *See* Easement at PageID.346.   Plaintiffs' complaint does not allege an event which triggers the Village to restore their property as contemplated by the easement.   Accordingly, the Village should be granted summary judgment as to plaintiffs' Count III (Breach of Contract).

### D.    Counts IV and V – Trespass and Nuisance

"Trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it."  *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 59, 602 N.W.2d 215, 219 (1999) (internal quotation marks omitted).   In Count IV, plaintiffs alleged that the Village's flooding of plaintiffs' property constituted a trespass, while in Count V they alleged that the Village's flooding constituted a nuisance.   Amend Compl. at PageID.332-333.   The Village does not address the merits of plaintiffs' claims for trespass and nuisance.   Rather, the Village treats trespass and nuisance together, and seeks summary judgment because the claims are barred by state statutory immunity and the applicable statutes of limitations.

17

### 1.    Governmental immunity

The Village seeks governmental immunity under M.C.L. § 691.1407(1), which sets forth the general rule that "[a] governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or the discharge of a governmental function." In this regard, the legislature has defined governmental function as "an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or the law." M.C.L. § 691.1401(b).    In short, the Village contends that its design, construction and maintenance of the bike path is a government function, and that it is immune from tort liability arising out of the functions.

Plaintiffs do not contest that the Village may be immune from damages, but assert that the immunity does not apply to equitable relief.[4] The Village points out that there is no trespass or nuisance to abate because the flood waters have receded and that plaintiffs have failed to accompany their request for protective relief with an allegation of prospective injury. *See* Village's First Motion (ECF No. 117, PageID.558-559).   The Village has failed to address the merits of the injunction issue in a meaning manner. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."   *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

---

[4] Plaintiffs state, "While Defendant may be entirely correct in its arguments regarding immunity from any monetary damages, it entirely fails to discuss or acknowledge that Michigan does not grant governmental bodies immunity in tort cases when plaintiffs seek equitable relief."   Plaintiffs' Response (ECF No. 115, PageID.493).

18

Accordingly, the Village should be granted summary judgment as to plaintiffs' claims for monetary damages in Count IV (trespass) and Count V (nuisance). However, as discussed *infra*, plaintiffs are not entitled to any relief for trespass or nuisance because their claims are barred by the statute of limitations.

### 2.    Statute of Limitations

The Village contends that plaintiffs' claim for money damages resulting from the alleged trespass and nuisance fall within M.C.L. § 600.5805(10) which provides that "the period of limitations is 3 years at the time of death or injury for all other actions to recover damage for the death of a person or injury to a person or property."   Village's Brief (ECF No. 112, PageID.439).   M.C.L. § 600.5805 was amended effective June 12, 2018[5], with the operative section now M.C.L. § 600.5805(2), which similarly states "[e]xcept as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property."   The general accrual statute, M.C.L. § 600.5827 provides that " . . . the period of limitations runs from the time the claim accrues" which is "at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Here, the Village contends that plaintiffs' trespass and nuisance claims accrued in 2011 when the bicycle path and walkway was built (ECF No. 112, PageID.439-440), while

---

[5] *See* P.A.2018, No. 183, Imd. Eff. June 12, 2018.

plaintiffs contend that their claims accrued when they were harmed in 2019 (ECF No. 115, PageID.494-496). The Court agrees with the Village.

> The limitations period for trespass and nuisance claims is three years. [*Morse v. Colitti*, 317 Mich. App. 526, 551; 896 N.W.2d 15 (2016)]; *see* MICH. COMP. LAWS § 600.5805(2) ("[T]he period of limitations is 3 years after the time of . . . injury for all actions to recover damages for . . . injury to . . . property."). Because the Michigan Supreme Court has abrogated the "continuing wrongs" doctrine of trespass claims, "[t]he limitations period runs from the time the claim accrues." *Morse*, 317 Mich. App. at 550-51 (citing MICH. COMP LAWS § 600.5827). In other words, the limitations period for trespass claims run at the time of "the wrong," which is "when both the act and the injury first occur." *Id.* at 551.

*Moore Family Trust v. Bingham*, No. 2:19-cv-115, 2022 WL 2619857 at *9 (W.D. Mich. July 6, 2022).   *See also*, *Burton v. Michigan Sugar Co.*, No. 341155, 2019 WL 1211455 at *3 (Mich. App. March 14, 2019) ("the three-year limitations period for property damage claims arising out of nuisance or negligence begins running from the time that the claim accrues, which occurs when the wrong upon which the claim is based 'was done regardless of the time when damage results.'").

As discussed, the Village constructed the bike path in 2011. That is the wrongful conduct upon which plaintiffs base their claims for trespass and nuisance. Plaintiffs filed this action on October 15, 2020, about nine years after the alleged construction. Plaintiffs' claims for trespass and nuisance are barred by the three-year statute of limitations. Accordingly, the Village should be granted summary judgment as to plaintiffs' Count IV (trespass) and Count V (nuisance).

20

## V.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant's motion for partial summary judgment (ECF No. 112) and motion for summary judgment (ECF No. 117) be **GRANTED** and that this case be **DISMISSED**.

Dated: February 14, 2023                                    /s/ Ray Kent
                                                            RAY KENT
                                                            United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).